SIMPSON COUNTY ET AL. *v.* THOMAS J. BUCKLEY ET AL.

REMOVAL OF COUNTY SEAT.   *Constitutional law.   Constitution 1890, sec. 259.  · Right of citizen and taxpayer.   Equity proceeding.*

.Under constitution 1890, sec. 259, regulating and restraining the removal of county seats, any citizen and taxpayer may, in his own name and behalf, maintain a proceeding in equity to prevent a violation of the constitution by unauthorized and unlawful action of the board of supervisors, although the attorney-general and the district attorney decline to sue and refuse to authorize the use of their names in so doing.

FROM the chancery court of Simpson county.

HON. HENRY C. CONN, Chancellor.   ·

Buckley and three hundred and seventy-five other persons, appellees, who sued in behalf of themselves and all other citizens of Simpson county, were complainants in the court below ; the county of Simpson, the board of supervisors thereof, the members of said board, the county treasurer of said county, the clerk of the chancery court thereof, and another, appellees, were defendants.

· The bill of complaint charges that since the organization of the county of Simpson in the year 1824, the town of West-ville had continuously been and still is the county seat of said county ; that the board of supervisors of said county had unlawfully undertaken to remove the county seat from Westville to a place called Edna (now called Mendenhall), that an elec-

tion had been ordered and held in the county on the subject of removal of the county seat from Westville to Edna, now Mendenhall; that the removal proposed was away from the center of the county, Edna, now Mendenhall, being more distance from the geographical center of the .county than Westville ; that at the election which was held a bare majority of the voters voted in favor of the removal, which majority was less than two-thirds of the voters at the election as required by the constitution of 1890, sec. 259, to remove the county seat from Westville to Edna, now Mendenhall ; that a previous bill in chancery had been filed by several citizens seeking to prevent the removal of the county seat ; that in the suit in which the bill was filed, a decree had been made in the cause falsely reciting that the case had been tried and disposed of on its merits ; when in truth, and as a matter of fact, the case was never tried on its merits,. and the decree was a collusive one, and was the result of a bargain and scheme between the complainants in said case and speculators, interested in town lots in the town of Edna, now Mendenhall, and that the decree rendered in said case was a fraud, and that a fraud had been practiced on the county, and that complainants were not estopped thereby.

The bill further charges that some of the members of the board of supervisors were interested in town lots in Edna, now Mendenhall, and for that reason were easily persuaded that the county seat could be removed from the center of the county on a bare majority vote ; that the said board had, late one evening, passed an order for the removal of the records of Simpson county from Westville to said Edna, now Mendenhall, and they caused them to be transferred there in the night time in violation of law.

The bill further charges that the attorney-general and the district attorney had both been applied to and had both refused to institute any proceeding to prevent the wrong, and had declined to allow their names to be used in this or any other litigation to prevent the great outrage which the board of super-

visors were seeking to put upon the good people of Simpson county.

The bill further charges corruption on the part of members of the board of supervisors, and that the whole proceeding was a fraud because of corruption.

The prayer of the bill was for an injunction compelling the officers of the county to return the public records to Westville, the legal county seat.

The defendants, the board of supervisors, demurred to the bill, assigning, among others, the following causes: No equity on the face of the bill. Complainants have not shown that they have suffered any injury or loss not shared by all other citizens of the county. Removal of the county seat cannot be ordered by the board of supervisors at the suit of private citizens. The finding of the board of supervisors that the county seat had been removed from Westville to Edna, now Mendenhall, and that the latter place had been chosen at an election held on the subject, is not reviewable at the suit of complainants. An order of removal of a county seat cannot be collaterally attacked. From a decree overruling the demurrer of the board of supervisors of the county to the bill of complaint the defendants, the board of supervisors, appealed to the supreme court.

*C. M. Whitworth* and *Alexander & Alexander*, for appellants.

Can the removal of the county seat pursuant to an election, though irregularly held, be enjoined at the suit of private citizens or taxpayers? The general rule is stated in 7 Am. & Eng. Ency. Law (2d ed.), 1043.

" No person can have any property rights in the location of a county seat, and, therefore, a private citizen has no standing in court to maintain a suit to prevent a removal by the proper authorities." The authorities cited in support of the text are *Armstrong* v. *Dearborn*, 4 Blackf. (Ind.), 208 ; *Luce* v. *Fens-*

ler, 85 Ia., 596 ; *Walker* v. *Tarrant Co.*, 20 Tex., 16 ; *Harrell* v. *Lynch*, 65 Tex., 146 ; *Permenter* v. *Bourne*, 8 Wash., 45 ; 10 Am. & Eng. Ency. Law, 899 ; *Branton* v. *County*, 79 Miss., 277 ; *Worsham* v. *Richards*, 46 Tex., 441 ; *Attorney-General* v. *Supervisors*, 33 Mich., 289 ; *Hipp* v. *Supervisors*, 62 Mich., 456 ; *McMellan* v. *Butler*, 15 Kan., 62.

The ground of the foregoing decisions is that no citizen can have any pecuniary interest in the location of a county seat. *Newton* v. *Commissioners*, 100 U. S., 548.

The only state which holds to the contrary, so far as we can find, is Illinois.    See *Boven* v. *Smith*, 47 Ill., 482 ; *People* v. *Wiant*, 48 Ill., 263.

But these cases are roundly condemned in other jurisdictions. See, for instance, the opinion in 8 Wash., 45 ; *Mode* v. *Beasley*, 143 Ind., 306 ; *Davis* v. *Mayor*, 2 Duer, 663.

The designation of a county seat by proper election belongs to the legislative department.    *Smith* v. *Adams*, 130 U. S., 167.

"Taxpayers cannot by proceeding prevent a levy or enforcement of a tax nor dispute the validity of the previous judgment, nor relitigate any questions which were or might have been litigated in the original proceeding."    1 Freeman on Judg., sec. 178, and cases cited.

The canvass and decision of the board is conclusive for all purposes.    *Double* v. *McQueen*, 96 Mich., 39 ; *Pinkerton* v. *Staninger*, 101 Mich., 273 ; *Curry* v. *Paulson*, 43 Minn., 411.

The finding of facts by the board are conclusive as against a collateral attack.    Works on Courts and Jurisd., 144.

After the location is fixed the sufficiency of the original petition as to the number of names is not open to judicial investigation.    32 L. R. A., 723 ; *Saunders* v. *Metcalf*, 7 Tenn., ch. 419 ; *McWhirter* v. *Brainard*, 5 Ore., 426.

By analogy see, also, as to noninterference with contested elections.    41 La. Ann., 850 (13 *Ib.*, 89; 32 Ga., 812).

As to the conclusiveness of the canvass of the board see also 7 Am. & Eng. Ency. Law, sec. 1040, and cases cited.

Injunction does not lie, because there was a clear remedy by appeal. The code gives the right of appeal to any person aggrieved. The remedy by appeal was open to any citizen, even without giving bond, and failure to appeal bars the right to an appeal, even if it existed originally. 32 L. R. A., 725; Works on Courts, 144; *State* v. *Nelson*, 21 Neb., 572; *Board of Commissioners of Clark County* v. *State*, 61 Ind., 84; *State* v. *Judge*, 43 La. Ann., 125.

The rule is so universal that injunction does not lie where there is another remedy, that citation of authorities would seem to be useless. See, however, *Brooks* v. *Shelton*, 47 Miss., 243; *Newman* v. *Morris*, 52 Miss., 402.

It is held that one aggrieved by the action of the board in increasing his assessment must appeal, failing in which he has no standing in chancery. *Anderson* v. *Ingersoll*, 62 Miss., 73.

All taxpayers are concluded by the decree in the former injunction suit. It is well settled that a decree in a suit of this sort binds all other citizens of the same class. It would be intolerable to allow any, or all, of the thousands of Simpson county citizens successfully to enjoin the removal. See *Linden* v. *Alameda Co.* 45 Cal., 6; 32 L. R. A., 725; *Hannon* v. *Auditor*, 5 Am. St. Rep., 502; Freement on Judgt., 178.

This doctrine was not questioned by counsel for the complainant in the court below, and, we presume, will not be questioned here. It is claimed, however, that the conclusiveness of the former decree is destroyed by the averments of the bill. To this we reply there is no sufficient averment of the fraud. It is well settled that fraud must be clearly charged. The use of general terms will not avail. The act of fraud must be specifically pointed out.

The bill throughout contains a covert arraignment of some member of the board for fraud and improper influences. The member is not named and the particular act of fraud is not charged. Surely such general charge cannot serve as make weights against the county. Moreover, the board exercised no

personal judgment in the matter.   The election was carried by
a popular vote.

Complainants rely mainly on *Compton* v. *Zabriskie*, 101
U. S., 610, which is cited by Mr. Dillon in support of the
right of the taxpayer to enjoin unlawful corporate acts.   The
texts and the cases cited are not in point.   That was a case of
unlawful appropriation, by a municipal board, of money with-
out present provision for payment, in violation of the statute.
This is a purely political question, involving no individual
rights, and in the nature of things the board cannot be contin-
ually enjoined from carrying out the people's wishes.   *Heffner*
v. *Commissioners*, 16 Wash., 273, clearly lays down the rule
that if the board examined and canvassed and declared the
result, its action is final.

The people of Simpson county have spoken emphatically in
favor of removal.   The board, acting presumably on their own
knowledge, or on evidence that was sufficient, held that removal
had carried.   This necessarily involved the holding, either that
Edna, now Mendenhall, was nearer the center of the county
than Westville, or that the vote was in any event sufficient.
These parties have not appealed.

*R. N. Miller*, for appellees.

As to the main proposition, has the private citizen a standing
in court to prevent an illegal removal of the seat of justice of
his county?   God pity us in the hands of some officials I have
known if we haven't.   The bill charges that the board of su-
pervisors deliberately violated the law, and sold the seat of
public justice to a band of speculators.

In 2 Dillon on Mun. Corp., secs. 914 to 916, the doc-
trine is distinctly laid down as follows: "In this coun-
try, the right of property holders or taxable inhabitants to
resort to equity to restrain municipal corporations and their
officers from transcending their lawful powers or violating
their legal duties in any mode which will injuriously affect the

taxpayers, such as making an unauthorized appropriation of the corporate funds, or an illegal disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon real property, under circumstances presently to be explained, has been affirmed or recognized in numerous cases in many of the states. It is the prevailing doctrine on the subject. It can perhaps be vindicated upon principle, in view of the nature of the powers exercised by municipal corporations and the necessity of affording easy, direct and adequate preventive relief against their abuse. It is better that those immediately affected by corporate abuses, should be armed with power to interfere directly in their own names than to compel them to rely upon the action of a distant state officer . . . Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill, by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate power. The courts may be safely trusted to prevent the abuse of their process in such case." This is supported by abundant authority to be found in the notes to these sections, and particularly by the case of *Crampton* v. *Zabriskie,* 101 U. S., 601.

High on Injunc., sec. 1257, says: "An injunction is the appropriate remedy to prevent the removal of county officers, of their offices and records pending the determination of a litigation concerning the removal of the county seat, provided such suit is prosecuted with reasonable diligence."

In support of these positions I cite as additional authority: *Land Lumber Co.* v. *McIntyre,* 100 Wis., 245 (69 Am. St. Rep., 915), which holds: "If a county has a plain cause of action for an injury done to it, which should be enforced for the protection of its citizens or taxpayers, and its governing board refuses to assert such cause of action, any citizen, by reason of his direct interest, may sue, in behalf of himself and others similarly situated, the person against whom the

cause of action exists, and thereby enforce the rights of the county."

The case of *Barnes* v. *Board of Supervisors of Pike County*, 51 Miss., 305, was an injunction by taxpayers to prevent the removal of the seat of justice, and at least it never occurred to the court in that case that the private citizen was without remedy when the municipal officer refused to act.

CALHOON, J., delivered the opinion of the court.

The change of a county seat has been made the subject of constitutional regulation and restriction.    Const., sec. 259.    It must, therefore, be deemed a matter of serious concern, and it seems to us better to comport with the nature of the subject to maintain the right of the citizen and taxpayer to interpose and invoke the aid of chancery to prevent a violation of the constitution and disregard of his rights by unauthorized and unlawful action of county authorities.    The citizen may be largely interested in retaining the county seat where it has been established, and he should not be denied the right to invoke the aid of the judicial department of the state to prevent a violation of the constitution and law because the district attorney and attorney-general refuse to permit the use of their names in a suit.    It seems to us, on the merits, the bill should be answered, whereby it may be seen whether the result attained in Simpson county has been by illegal or fraudulent practices and collusion, as charged.

*Affirmed and remanded, with thirty days for answer after mandate filed below.*