MARION H. TURNER ET AL. *v.* MORRIS E. COCHRAN ET AL.

[42 South. Rep., 876.]

TAXATION. *Uniformity. New judicial district. Courthouse bonds. Constitutional law. Constitution* 1890, *sec.* 112; *Laws* 1906, *p.* 197.

· An act of the legislature which divides a county into two judicial districts, practically making a new county for court purposes and authorizing the issue of the bonds of the new district to secure money borrowed to meet the cost of erecting and furnishing a court house and jail therein, does not violate sec. 112, constitution· of 1890, since said section does not prohibit a local assessment for local convenience which is equal and uniform throughout the locality.

FROM the chancery court of Jasper county.

HON. JAMES L. McCASKILL, Chancellor.

The appellants, Turner and others, were complainants in a proceeding to enjoin the appellees, Cochran and others, county officials, from putting into effect an act of the legislature (Laws 1906, ch. 168) dividing Jasper county into two court districts, and providing for the erection of public buildings in the new district, and the issuance of bonds of that district for the purpose of meeting the expenditures incurred thereby, and levying a special tax on the property in the new district. Section 20 of the act in question (Laws 1906, ch. 168) provided for the location, character, and cost of the buildings to be erected by the board of supervisors, and section 21 thereof authorizes the board to issue the bonds of the new (second) district in the requisite amount, the payment of which was to be met by taxes authorized to be levied by the board on the property situated in the district. Laws 1906, p. 197. A temporary injunction was granted, and at the hearing, on a motion to dissolve the injunction, the court below dissolved the same, and complainants appealed to the supreme court.

*Amis & Dunn,* for appellants.

We submit that the provisions of section 20 of the act of 1906 are arbitrary, and that if the legislature possesses the power to prescribe the maximum and minimum costs of a court house and jail, for the second district of Jasper county, as above attempted, that such power is an exceedingly dangerous one. That the act in this respect operates to suspend the general laws of the state of Mississippi, as found in sections 313 and 315 of the code of 1906, will not be disputed. Section 313 of the code of 1906, which is a general law, wisely submits to the discretion of the board of supervisors the right to determine the material, the dimensions, and the plans and cost of remodeling or repairing or building a new court house or jail for the county. Court houses and jails for counties are erected and repaired at the cost of the taxpayers of the individual county. It is purely a county affair. The burden must be borne alone by the taxpayers of the particular county, and the legislature, which is the representative body of the entire state, ought not to have the power to say what amount the taxpayers of the particular county shall pay for the erection of a court house for the county. The exercise of such a power is violative of the spirit of the constitution and the genius of our institutions; it amounts to the imposition of the burden of taxation without representation. A county is a constitutional and legal subdivision of the state; it is an entire sovereignty. As to the powers which are conferred upon it as such, and in the exercise of these powers, it should be left alone and undisturbed by legislative enactment. To substitute the legislative will for the local will of the county would be destructive of the foundations upon which our system of state, county, and municipal government rest. We contend that when the legislature fixed a maximum and minimum price to be paid by the particular county, for a court house, it invaded the peculiar and exclusive province of the county authorities, as recognized by the state constitution, and also by all general laws; and its act in so doing is void.

It should be noted, in this connection, that the bonds provided for by section 21 of the act are to be issued without consulting the taxpayers of the district as to whether the bonds shall be issued, the time they shall run, or the amount of such bond issue. We submit that the bill is void in this respect. We do not question the power of the legislature to arbitrarily create a taxing district, composed of territory less than one county or more than one county, and to provide also that the property located within such district shall be taxed for a special purpose, provided the purpose of the object sought to be accomplished is not general in its character or nature. The trouble here is that there is an attempt to carve out and create a taxing district, and to impose a special tax upon a given part of a county, in order to raise funds with which to make certain improvements which are common to all counties, and which, when called into being, would be the property of the entire county of Jasper, and not the peculiar special property of the said second district. Court houses and jails and the furnishing of same, are county properties. The county, as such, would hold the title; no other agency is provided for, by which the title may be held and protected. Inasmuch as court-houses and jails are general in their character to counties, and become and are the general property of the county, no special tax, limited to only a part of the property, can be levied, in order to realize funds with which to construct the same, without violating the provisions of section 112 of the constitution of the state, which provides that taxation shall be uniform and equal throughout the state, and that property shall be taxed in proportion to its value. To illustrate: suppose that the public convenience should require that a county bridge should be constructed over some stream, running through the western portion of Jasper county, would it be insisted that the legislature has the power to create a special bridge taxing district, and to levy special taxes on property alone situated in that district, in order to realize funds with which to

construct the bridge? Certainly not, for the reason that bridges are the general, common property of the county at large, and in order to construct and maintain the same, a general tax is levied upon all of the property throughout the county uniform in character and even in the burdens which it carries to the taxpayers. To illustrate again: the city of Jackson has the power to levy and collect taxes for the purpose of providing funds with which to construct public school buildings in the city. But, suppose that conditions should arise that would make it desirable for the city of Jackson to construct a schoolhouse in a given locality; would it be competent for the city of Jackson, or even the legislature in that case, to fix certain lines, the territory within which should constitute a special taxing district, and that the property therein alone should be taxed to build the schoolhouse, to be located therein, which, when built, would be the common property of the city of Jackson, and which would be devoted to the identical purposes to which the other school buildings, located in other parts of the city, are devoted? We think not. On the other hand, suppose the public convenience should require the location of a charity hospital in a given ward of the city of Jackson; in that case, the object would be special, the benefits peculiar, and the city of Jackson could impose a tax special in character upon the property of the ward in which such institution should be located. This would not be true, however, if the city of Jackson had general power to construct charity hospitals, and to equip and maintain the same. In such case, the property of the entire city would be required to bear the burdens incident to such taxation.

The state of Mississippi is subdivided into subordinate sovereignties of quasi corporations called counties, cities, and towns, upon and to each class there has been conferred certain powers which carry with them correlative obligations and duties. One of the duties common to counties is the construction and maintenance of court houses and jails at the expense of the county.

for general and common objects and purposes; and to undertake.
to impose a tax upon a limited portion of each county for such
purpose would be violative of the uniformity clause of the con-
stitution.　An exact equalization of the burden of taxation is
unattainable, but still there are well defined limits within which
the practicable equality required by the constitution may be pre-
served and which, therefore, should be deemed impassable bar-
riers of legislatve power.　Taxation must be general and uni-
form when levied for the purpose common to all counties, com-
mon to all municipalities, common to the state at large.　The
instance of a tax for levee purposes upon property benefited and
protected by the levee, or a tax for the building of a schoolhouse
in a separate school district, are not parallel cases to the subject
under consideration.　In any of these cases, there is a special
object to be accomplished not common to the entire state, or
county, and legal authorities may be collected in unlimited num-
ber which sustain the power of the legislature to carve out dis-
tricts and to levy special taxes for such purposes.　But our
research has failed to discover a single authority holding that a
special tax may be levied upon property located within the state
or county or municipality which is to be devoted to some general
object or purpose.

　When shall a tax be levied?　To what amount?　Direct or
indirect?　*Ad valorem* or specific?　What classes of property
are the fittest subjects of taxation, is a question which is con-
fined to the discretion of the legislature, but this prerogative
must be exercised by the legislature in conformity to the mandate
of the constitution, requiring taxation to be uniform and equal.

　For the legislature to say, by general law, that the county of
Smith shall have the power, and that it shall be its duty, to build
a court house and a county jail, and that, in order to do so, it shall
levy a tax upon property of the entire county, or in the alterna-
tive, it shall issue its bonds in a certain manner for such purpose,
which shall be the debt of the entire county of Smith, and then

by a special act, it shall require only a portion of Jasper county to levy a tax or to issue its bonds for the identical purpose that Smith county levied a tax upon the property of the entire county, or issue bonds which are the obligations of the entire county, to our minds, is clearly violative of section 112 of the constitution.

We seriously doubt the power of the legislature, by special act, to provide for the issuance of the bonds of the county, as is done in this case, which are to be paid from a tax levied upon the property of only a part of the county. A county is a constitutional and legal entity, and all acts done, and obligations assumed, in the name of the county, must be, it seems to us, an obligation resting alike on all of the citizens and all of the property within the county, subject to taxation. The authorities cited for the appellees have no application to the case before the court.

*Sam Whitman, Jr.,* for appellees.

There is no restriction, so far as we know, upon the power of the legislature to establish special taxing districts as it may see fit and proper.

In the legislative act under discussion, the legislature has divided Jasper county into two judicial districts—that is, the legislature has practically divided Jasper county into two counties for judicial purposes; one of these judicial districts is as distinct from the other judicial district, and the courts that will be held in the one district are as distinct from the courts that will be held in the other district, as if the two districts were two separate and distinct counties. Evidently the purpose of the legislature in establishing a second judicial district in Jasper county was to add to the convenience of the people of the newly established district.

The general rule that taxation must be uniform does not mean as we construe it, that it must be uniform over any particular territory except the territory embraced in the special taxing district. If the legislative act in question has established a special taxing district in Jasper county comprising the territory em-

braced in the second judicial district of the county, then taxation must be uniform in that taxing district; and there is no contention in this case by the appellants that this rule of uniformity does not prevail so far as the second district of the county is concerned.

Nor should any difficulty arise in the mind of the court because the second district of the county is not created by express terms a corporation; because the bonds provided for in the act can be issued as county bonds in form and the revenue to be derived by a special tax on the property in the second judicial district of the county considered as a special taxing district pledged to their payment. The form of the bonds is immaterial. In fact, under the decisions, if the bonds were to be issued in form as bonds of the second judicial district of Jasper county, then the courts, in the event of litigation as to the bonds, would of necessity imply that the second district was a corporation to the extent that it had power to issue the bonds; and, therefore, whether the bonds be issued in the form of county bonds with the revenue of a certain part of the territory pledged to their payment, or whether they be issued as bonds of the district, the district in either event having received and appropriated the money, the property of that district will be held liable for the payment of the bonds.

I call the court's attention to the case of *Daly* v. *Morgan,* 1 L. R. A., 757; *Blair* v. *West Point,* 5 Fed. Rep., 265; *Cook* v. *Portland,* 13 L. R. A., 533; *Commissioners* v. *Dodge County,* 24 U. S. (Lawyers' ed.), 625.

The bonds are not void because the question of their issuance was not submitted to a vote of the people of the proposed district. The answer to the contention of appellants is simple and complete. The legislature is under no obligation to submit the matter of the issuance of the bonds to the people of a dstrict or county at all. The general law applicable to the issuance of county bonds is not applicable to the matter of the issuance of the

bonds provided for in this bill, because the bonds provided for in this bill are of a special kind, differing from the bonds generally issued by a county; and, therefore, the legislature had the perfect right to impose restrictions in regard to their issuance, or to impose no restrictions at all, as it saw proper.    This bond issue being a special bond issue, the legislature had the right to prescribe a special rule to govern it.    And the rule it had prescribed is set forth in the legislative act.

CALHOON, J., delivered the opinion of the court.

By Laws 1906, p. 197, ch. 168, the legislature divided Jasper county into two judicial districts.    By section 20 this act provides for the erection of a court house and jail at Bay Springs, in the new district, prescribes that the minimum and maximum cost of the court house shall be $15,000 and $25,000, the minimum and maximum cost of the jail shall be $2,000 and $3,000, and that the court house furnishings should not exceed a cost of $2,500.    By section 21 of the act, the legislature saw fit to saddle the expenditures for these objects on the new district, for whose convenience it was organized, and to empower the board of supervisors to borrow money on the bonds of that district.

The very able argument of counsel for appellants fails to convince us that these provisions are *ultra vires*.    Section 112 of the constitution is, as we think, not violated, because, as uniformly held, it is not prohibitive of local assessments for local convenience, and as to the locality the assessment is equal and uniform, and, as we all agree, the act in fact makes a new county for court purposes.

*Affirmed.*